UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANHEUSER-BUSCH, INC.,

                Plaintiff,

      v.

MAJOR LEAGUE BASEBALL PROPERTIES, Inc.

                Defendant.

JUDGE SULLIVAN

10 CIV 8513

Case No.

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Anheuser-Busch, Inc. ("Anheuser-Busch"), by and through its attorneys, complains against defendant Major League Baseball Properties, Inc. ("MLBP") and for its causes of action alleges as follows:

### NATURE OF THE CASE

1. Pursuant to a series of agreements, Anheuser-Busch has been the official sponsor of Major League Baseball in the malt beverage category for over thirty years. In addition to being an official sponsor of the league, Anheuser-Busch also maintains sponsorship agreements with 26 of the 30 major league teams.

2. The current promotional rights agreement between Anheuser-Busch and MLBP expires this year (the "Current Promotional Rights Agreement").

3. The Current Promotional Rights Agreement grants Anheuser-Busch rights to negotiate the terms of a renewal agreement.

4. During that period, Anheuser-Busch and MLBP agreed to renew Anheuser-Busch's exclusive malt beverage sponsorship rights for a number of years. The parties

memorialized their understanding in a detailed seven-page letter agreement (the "April Renewal Agreement").

5. Specifically, on or about April 22, 2010, after several rounds of negotiations, MLBP sent an unexecuted copy of a renewal agreement to Anheuser-Busch. Anheuser-Busch signed under the words "Agreed and Accepted" and returned the signed agreement to MLBP. MLBP then countersigned and sent a fully-executed copy to Anheuser-Busch. Immediately thereafter, the parties exchanged congratulatory messages about concluding a new sponsorship deal.

6. The April Renewal Agreement sets forth all material terms of the renewal. It was signed by John Brody, Senior Vice President of Corporate Sales and Marketing, on behalf of MLBP and Brad Brown, Senior Director of Sports Marketing, for Anheuser-Busch. It is a binding and enforceable contract under New York law.

7. The April Renewal Agreement contemplates that the negotiated "business points" agreed to by the parties in writing "will be included with the standard terms and conditions" in a long-form contract. Thus, all that remained was for the parties to take the ministerial step of including the terms negotiated and agreed to in the April Renewal Agreement with the standard terms already contained in the existing promotional rights agreement between Anheuser-Busch and MLBP.

8. On the same day that the parties signed the April Renewal Agreement, MLBP stated that it would prepare the long-form contract. MLBP never did so.

9. Instead, several weeks later, Tim Brosnan of MLBP demanded that Anheuser-Busch renegotiate the April Renewal Agreement and pay MLBP an exponentially higher rights fee, claiming that there had been a change in marketplace dynamics.

10. When it became clear that MLBP had no intention of sending the long-form contract as it had promised, Anheuser-Busch prepared the agreement itself and sent it to MLBP on September 3, 2010.

11. In response, Mr. Brosnan claimed that the April Renewal Agreement was not binding on MLBP and informed Anheuser-Busch that MLBP planned to offer the sponsorship rights to Anheuser-Busch's competitors.

12. Any action taken by MLBP to negotiate a promotional rights agreement with a competing participant in the malt beverage category would constitute a breach of the April Renewal Agreement as well as a breach of the Current Promotional Rights Agreement.

13. Absent prompt declaratory and injunctive relief, Anheuser-Busch will be deprived of a unique and invaluable property right (the MLBP sponsorship, in which Anheuser-Busch has invested hundreds of millions of dollars over the past thirty years) and will suffer irreparable harm for which monetary damages will not adequately compensate it. As a result, Anheuser-Busch seeks a declaratory judgment (1) that the April Renewal Agreement is a valid and enforceable contract under New York law and (2) that any third-party negotiation entered into by MLBP would interfere with Anheuser-Busch's exclusive sponsorship rights.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because (a) the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and (b) the matter is between a resident of Missouri and a resident of New York.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendant MLBP resides in this District, conducts business in this District, and a substantial part of the

events giving rise to the claim occurred in this District. Further, defendant MLBP is subject to personal jurisdiction in this District.

16. Venue is also proper in this District because the parties agreed in the Current Promotional Rights Agreement that the U.S. District Court for the Southern District of New York would be the sole venue for any dispute arising directly or indirectly from the relationship created by the contract.

## THE PARTIES

17. Plaintiff Anheuser-Busch is a Missouri corporation with its principal place of business at One Busch Place, St. Louis, Missouri 63118. Anheuser-Busch is the leading brewer of beer in the United States. Its brands include the world-famous Budweiser, Bud Light, Michelob, and Busch families of beer.

18. Defendant MLBP is a New York corporation with its principal place of business at 245 Park Avenue, New York, New York 10167.

## FACTUAL BACKGROUND

### A. The Importance of the MLBP Sponsorship to Anheuser-Busch

19. Anheuser-Busch has been the official sponsor of Major League Baseball in the malt beverage category for over thirty years. The advertising and promotional rights associated with Anheuser-Busch's relationship with MLBP are invaluable. The key values of tradition, heritage, and quality that are associated with Anheuser-Busch and its flagship brand, Budweiser, align perfectly with America's pastime, and the MLBP sponsorship is critical to Anheuser-Busch's marketing efforts for the Budweiser brand and other Anheuser-Busch brands. These rights enable Anheuser-Busch to reach millions of customers and prospective customers on a daily basis during baseball season.

20. In 2010 alone, Anheuser-Busch will invest tens of millions of dollars in advertising and promotions related to Major League Baseball primarily on the Budweiser brand.

21. MLBP provides a unique sponsorship platform for Anheuser-Busch because of the length of the baseball season, frequency of games, and timing of the season during the summer, which is the peak beer-selling season. Major League Baseball has more games per week than any other sport, and the All-Star game is one of the highest rated television events of the summer. An enormous volume of beer is sold in the ballparks during the baseball season.

22. Anheuser-Busch's exclusive sponsorship allows Anheuser-Busch to, among other things, advertise and promote its brands at ballparks, on television, in print materials, in its packaging, and through promotions at retailers and other establishments.

23. The goodwill that Anheuser-Busch has built through its partnership with MLBP cannot be replaced or duplicated. Recognizing the importance of the MLBP sponsorship, Anheuser-Busch has bargained for the first opportunity to negotiate for these rights when they are coming up for bid.

### B. The Current Promotional Rights Agreement

24. The Current Promotional Rights Agreement grants Anheuser-Busch rights to negotiate the terms of a renewal agreement.

25. MLBP cannot negotiate with third parties unless Anheuser-Busch and MLBP are unable to agree upon terms of a renewal.

### C. The April Renewal Agreement

26. In December 2009, MLBP sent a letter to Anheuser-Busch setting forth MLBP's proposed terms of a renewal agreement.

27. Negotiations between MLBP and Anheuser-Busch regarding the renewal concluded on or about April 23, 2010, when each party signed the April Renewal Agreement.

28. The April Renewal Agreement is seven pages long and is signed by both parties. The April Renewal Agreement is exhaustive in its scope, setting forth all material terms, including the rights fee, term, and territory. In all, it contains thirty separate sections setting forth, in great detail, every aspect of the contractual relationship between Anheuser-Busch and MLBP.

29. MLBP prepared the April Renewal Agreement and provided it to Anheuser-Busch for execution. On or about April 22, 2010, John Brody, Senior Vice President of Corporate Sales and Marketing for MLBP, sent an unexecuted copy of the April Renewal Agreement to Anheuser-Busch by e-mail, stating: "As discussed, attached please find a formal Letter of Intent document. Please sign and email or fax back so we can make it official!! We are excited about the extension of this amazing partnership. Congratulations partner!!"

30. On the same day, Anheuser-Busch signed the April Renewal Agreement under the words "Agreed and Accepted" and sent it back to MLBP. MLBP then countersigned the April Renewal Agreement and sent a fully executed copy to Anheuser-Busch. Immediately thereafter, the parties exchanged congratulatory messages about concluding a new sponsorship deal.

31. The April Renewal Agreement contemplates that the negotiated "business points" agreed to by the parties in writing "will be included with the standard terms and conditions" in a long-form contract. Thus, all that remained was for the parties to insert the terms set forth in the April Renewal Agreement into the standard form promotional rights agreement between Anheuser-Busch and MLBP. This was a purely ministerial step.

32. Anheuser-Busch offered to perform this task, but MLBP representatives responded "We'll do it." They never did.

### D. The Anheuser-Busch/NFL Sponsorship Agreement and MLBP's Attempts to Repudiate the April Renewal Agreement and Current Promotional Rights Agreement

33. On May 4, 2010, shortly after the April Renewal Agreement was signed with MLBP, Anheuser-Busch publicly announced that it would become the official and exclusive beer sponsor of the National Football League ("NFL") beginning with the 2011 season.

34. After Anheuser-Busch's announcement of its sponsorship agreement with the NFL, Tim Brosnan, Executive Vice-President of MLBP, began to complain that the economic terms of the April Renewal Agreement were no longer satisfactory and that the market had changed. Eventually, on May 27, 2010, citing a change in "marketplace dynamics," MLBP demanded that Anheuser-Busch agree to pay a rights fee several times the amount to which the parties had already agreed.

35. Because Anheuser-Busch places enormous value on its long-standing relationship with the sport and recognized that it would be disadvantageous to end up in a dispute with MLBP, Anheuser-Busch officials met several times with MLBP in the spirit of cooperation. Although Anheuser-Busch believes that the terms of the April Renewal Agreement are clear, unambiguous, binding, and more than fair, Anheuser-Busch has remained open to considering additional arrangements so that MLBP would be an enthusiastic partner to Anheuser-Busch. During those conversations, Mr. Brosnan repeatedly assured Anheuser-Busch that MLBP was "not in the habit of breaking deals."

36. Because MLBP did not forward the long-form contract that it had agreed to prepare, on September 3, 2010, Anheuser-Busch sent a draft long-form promotional rights agreement to MLBP, which incorporated the terms agreed to in the April Renewal Agreement

and included them within the standard terms and conditions already contained in the Current Promotional Rights Agreement.

37. MLBP did not respond until September 17, 2010. On that date, Mr. Brosnan sent a letter to David Peacock, the President of Anheuser-Busch, stating that MLBP was "taking [its] sponsorship rights to the market" and was prepared to discuss those rights with Anheuser-Busch "as well as others in the category."

38. Upon receipt of Mr. Brosnan's letter, Mr. Peacock spoke with Allan "Bud" Selig, the Commissioner of Major League Baseball. Commissioner Selig asked that Anheuser-Busch refrain from responding to Mr. Brosnan's letter until he had an opportunity to look into the matter.

39. Mr. Peacock never heard back from Commissioner Selig. Instead, on October 1, 2010, Mr. Peacock was advised by Mr. Brosnan that MLBP was going to disavow its agreement with Anheuser-Busch and offer the sponsorship rights to Anheuser-Busch's competitors.

40. The same day, Gary Rutledge, the General Counsel of Anheuser-Busch, sent a letter to Ethan Orlinsky, the General Counsel for MLBP, urging MLBP to abide by the April Renewal Agreement, and offering to meet with MLBP executives to ensure the continuing success of the parties' long-standing relationship.

41. Mr. Orlinsky responded via letter dated October 5, 2010, complaining about the NFL sponsorship agreement and reiterating MLBP's intention "to take its rights to market."

42. After additional discussions were unsuccessful in resolving the dispute, on October 8, 2010, Anheuser-Busch sent letters to several U.S. competitors, notifying them of Anheuser-Busch's exclusive sponsorship rights and advising them that Anheuser-Busch would

defend its rights should they enter into negotiations with MLBP concerning the rights already granted to Anheuser-Busch.

43. MLBP does not have the right to enter into negotiations with third parties for an exclusive sponsorship agreement in the malt beverage category by virtue of the April Renewal Agreement and the Current Promotional Rights Agreement. Because Anheuser-Busch and MLBP agreed upon the terms of the renewal, MLBP does not have the right to take the sponsorship rights "to the market."

### E. Injury to Anheuser-Busch

44. MLBP's decision to offer sponsorship rights to other participants in the malt beverage category puts Anheuser-Busch in imminent jeopardy of losing an undisputedly unique and irreplaceable sponsorship property. This harm will be irreparable and incapable of being remedied adequately through monetary damages.

45. Anheuser-Busch will also lose a significant competitive advantage if MLBP negotiates with other participants in the malt beverage category, which are by definition direct competitors of Anheuser-Busch. An award of monetary damages, even if substantial, could not adequately compensate Anheuser-Busch for the full extent of the harm it would suffer due to the erosion of its competitive position if MLBP awards the sponsorship rights to a third party.

46. Beyond Anheuser-Busch losing its sponsorship rights, Anheuser-Busch and its brands would also lose existing and prospective goodwill with baseball fans. For the last thirty years, fans have recognized Budweiser and the other Anheuser-Busch brands as the exclusive beer sponsor of America's pastime. Anheuser-Busch has spent decades, and millions of dollars, building the reputation and goodwill of Budweiser and the other Anheuser-Busch brands with these fans. Their loss would be unquantifiable.

## CLAIMS FOR RELIEF

### COUNT I
### (Declaratory Judgment Regarding the April Renewal Agreement)

47. Anheuser-Busch incorporates by reference paragraphs 1 through 46 as if fully alleged herein.

48. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, this Court may declare the rights and other legal relations of any interested party seeking such a declaration.

49. The April Renewal Agreement is a valid and enforceable contract.

50. The April Renewal Agreement provides Anheuser-Busch multi-year exclusive sponsorship rights.

51. MLBP has advised Anheuser-Busch that it does not view the April Renewal Agreement as binding, and it intends to take its promotional rights to market.

52. Based on the foregoing facts, there now exists an actual and continuing justiciable controversy between Anheuser-Busch and MLBP regarding the enforceability and validity of the April Renewal Agreement.

53. Thus, Anheuser-Busch seeks a declaratory judgment that the April Renewal Agreement is a valid and enforceable agreement that remains in full force and effect.

### COUNT II
### (Declaratory Judgment Regarding the Current Promotional Agreement)

54. Anheuser-Busch incorporates by reference paragraphs 1 through 53 as if fully alleged herein.

55. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, this Court may declare the rights and other legal relations of any interested party seeking such a declaration.

56. The Current Promotional Rights Agreement is valid and enforceable.

57. Based on the foregoing facts, there now exists an actual and continuing justiciable controversy between Anheuser-Busch and MLBP regarding the enforceability and validity of certain of its rights under the Current Promotional Rights Agreement.

58. Thus, Anheuser-Busch seeks a declaratory judgment that that MLBP is barred by the Current Promotional Rights Agreement from negotiating with any third-party participant in the malt beverage category.

## PRAYER FOR RELIEF

WHEREFORE, Anheuser-Busch requests judgment as follows:

a. Declare that the April Renewal Agreement is a valid and enforceable contract;

b. Declare that MLBP is barred by the Current Promotional Rights Agreement from negotiating with any participant in the malt beverage category;

c. Preliminarily enjoin MLBP from entering into any agreement with another participant in the malt beverage category for the term of the renewal agreement between MLBP and Anheuser-Busch;

d. Direct MLBP to specifically perform its obligations under the April Renewal Agreement; and

e.  Award such other relief as the Court deems just and proper under the circumstances.

Dated: November 12, 2010               Respectfully Submitted,

By: *(signature)* Corey Worcester

Corey Worcester
(worcesterc@howrey.com)
HOWREY LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 896-6501
Fax: (212) 896-6600

Peter E. Moll (PHV to be submitted)
(mollp@howrey.com)
Brian D. Wallach (PHV to be submitted)
(wallachb@howrey.com)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800
Fax: (202) 783-6610

*Counsel for Anheuser-Busch, Inc.*